UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DAIANA AZPILCUETA, individually and on behalf of CAL-NEVA TRANSPORT & TOW, INC., a Nevada corporation,<br><br>Plaintiffs,<br><br>v.<br><br>THE STATE OF NEVADA, ex. rel. TRANSPORTATION AUTHORITY, a division of the Department of Business and Industry, DEPARTMENT OF PUBLIC SAFETY, OFFICE OF THE ATTORNEY GENERAL, and CITY OF CARSON CITY, a municipality of the State of Nevada; STEVEN SCHUETTE, in both his professional and individual capacity; STEVE ALBERTSEN, in both his professional and individual capacity; CHARLES TOLOTTI, in both his professional and individual capacity; DEAN BUELL, in both his professional and individual capacity; JOHN MCGLAMERY, in both his professional and individual capacity; WILLIAM PROWSE, in both his professional and individual capacity; KEVIN MCCOY, in both his professional and individual capacity; The PROGRESSIVE CORPORATION dba PROGRESSIVE CASUALTY INSURANCE COMPANY, an Ohio corporation; GALE LUNDEEN, an individual; MARCOS BRITO, an individual; and DOE DEFENDANTS 1-50,<br><br>Defendants. | 3:09-CV-00593-LRH-VPC<br><br><u>ORDER</u> |

Before the court is Defendants State of Nevada, ex rel. Transportation Authority, Department of Public Safety, Office of the Attorney General, Charles Tolotti, Dean Buell, John McGlamery, and William Prowse's (collectively "State Defendants") Motion to Dismiss (#21[1]). Plaintiff Daiana Azpilcueta, individually and on behalf of Cal-Neva Transport & Tow, Inc., ("Plaintiff") has filed an opposition (#46) to which State Defendants replied (#54).

## I.   Facts and Procedural History[2]

This action arose out of Plaintiff's operation of a towing company and an impound yard in Carson City, Nevada, from 2004 until 2009. Plaintiff opened Cal-Neva Transport & Tow, Inc. for business in February, 2004. (First Am. Compl. (#40) ¶ 23.) Plaintiff alleges that during the next five years, State Defendants, individually and collectively, threatened to run Plaintiff out of business and cancel her rotations with Nevada Highway Patrol ("NHP") and the Carson City Sheriff's Office ("CCSO") and harassed and intimidated Plaintiff and her employees. (First Am. Compl. (#40) ¶ 30.) State Defendants also allegedly investigated Plaintiff's business practices, obtained an arrest warrant for Plaintiff based on a false affidavit, and indicted and prosecuted Plaintiff for practices they knew or should have known were lawful. (First Am. Compl. (#40) ¶ 30.)

Plaintiff alleges that her company's policy for the release of impounded vehicles caused the harassment, arrest, indictment, and prosecution. (First Am. Compl. (#40) ¶ 31.) Prior to releasing a towed or impounded vehicle, Plaintiff required the owner of the vehicle to show proof of valid driver's license, insurance, and registration. (First Am. Compl. (#40) ¶ 31.) Plaintiff alleges that this policy was consistent with instructions received from both NHP and the CCSO. (First Am.

---

[1] Refers to the court's docket entry number.

[2] The court has taken the following facts primarily from the complaint. Because the court considers this case on a motion to dismiss, the court accepts the allegations in the complaint as true. *See Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008).

2

1  Compl. (#40) ¶ 32.)

2        Furthermore, Plaintiff alleges that Defendants harassed and threatened Plaintiff because she
3  discovered and exposed a fraudulent insurance scheme involving Progressive Insurance Company
4  ("Progressive").  (First Am. Compl. (#40) ¶ 1.)  Specifically, starting in January, 2005, Plaintiff
5  noticed an abundance of fake identification cards, registration, and insurance paperwork from
6  people trying to pick up impounded vehicles.  (First Am. Compl. (#40) ¶ 33.)  The insurance
7  policies appeared to be issued by Progressive.  (First Am. Compl. (#40) ¶ 33.)

8        In April, 2007, upon the request the Department of Public Safety ("DPS"), Plaintiff
9  participated in a sting operation as a citizen informant.  (First Am. Compl. (#40) ¶¶ 34-35.)
10 Plaintiff provided information about fake identifications and insurance documents to Defendant
11 Buell, an employee of DPS.  (First Am. Compl. (#40) ¶ 35.)  In September, 2007, Buell strongly
12 suggested that Plaintiff should stop asking for valid driver's licenses.  (First Am. Compl. (#40) ¶
13 36.)  In October, 2007, Buell allegedly called Plaintiff and ordered her to stop asking for valid
14 driver's licenses.  (First Am. Compl. (#40) ¶ 37.)  Buell also told Plaintiff that if she did not stop
15 her practices, he would refer her to the Office of the Attorney General.  (First Am. Compl. (#40) ¶
16 37.)

17       Shortly thereafter, Defendant Tolotti, an investigator with the Nevada Transportation
18 Authority ("NTA"), visited Plaintiff's company.  (First Am. Compl. (#40) ¶ 38.)  Tolotti told
19 Plaintiff about a call complaining about Plaintiff's procedures for releasing impounded vehicles.
20 (First Am. Compl. (#40) ¶ 38.)  Tolotti also informed Plaintiff that if she did not stop asking for
21 driver's licenses, he would notify the Attorney General's Office.  (First Am. Compl. (#40) ¶ 38.)
22 Although Tolotti had previously investigated multiple complaints about Plaintiff's policy, NTA had
23 closed or dismissed all the complaints without finding that Plaintiff violated any law.  (First Am.
24 Compl. (#40) ¶ 38.)

25

26

3

On February 12, 2008, NTA received another complaint about Plaintiff's policy from Defendant Brito, an individual who unsuccessfully attempted to retrieve from Plaintiff a motorcycle he claimed was his.  (First Am. Compl. (#40) ¶ 39.)  NTA's investigation report recommended closure of Brito's complaint due to a statute of limitations issue.  (First Am. Compl. (#40) ¶ 39.)  Despite this recommendation, NTA and Tolotti forwarded Brito's complaint to the Office of the Attorney General.  (First Am. Compl. (#40) ¶ 39.)  In September, 2008, Tolotti visited Plaintiff again and told her to cease asking for valid driver's licenses.  (First Am. Compl. (#40) ¶ 40.)

Defendant Prowse, a forensic investigator with the Attorney General's Office, investigated Brito's complaint.  (First Am. Compl. (#40) ¶ 39.)  On October 22, 2008, on the basis of Prowse's investigation, Deputy Attorney General McGlamery filed a criminal complaint against Plaintiff.  (First Am. Compl. (#40) ¶ 47.)  Plaintiff was subsequently arrested for embezzlement, attempting to commit theft by embezzlement, and conspiracy to commit theft by embezzlement.  (First Am. Compl. (#40) ¶ 42.)  Various newspapers published Plaintiff's name, picture, and a description of charges against her, asking people to come forward if they had been wronged by Plaintiff.  (First Am. Compl. (#40) ¶ 44.)  As a result of the arrest, CCSO and NHP took Plaintiff's company off their rotations.  (First Am. Compl. (#40) ¶ 43.)

After a preliminary hearing on February 27, 2009, the court dismissed the charges against Plaintiff, concluding that there was no evidence that Plaintiff committed a crime.  (First Am. Compl. (#40) ¶¶ 49-50.)  However, Plaintiff alleges that the harassment against Plaintiff continued after the dismissal of the charges.  (First Am. Compl. (#40) ¶ 53.)  Specifically, an unidentified officer of CCSO informed her that all CCSO officers were ordered not to impound vehicles while Plaintiff's towing company was on its rotation.  (First Am. Compl. (#40) ¶ 53.)

Plaintiff's complaint states the following claims for relief against State Defendants: (1) violation of Plaintiff's substantive due process rights guaranteed by the Fourteenth Amendment of the United States Constitution; (2) false arrest, false imprisonment, and malicious prosecution in

violation of Plaintiff's rights under the Fourth Amendment of the United States Constitution; (3) conspiracy to deprive Plaintiff of her constitutional rights; (4) intentional infliction of emotional distress; (5) interference with Plaintiff's contractual relationships and her prospective economic advantage; (6) malicious prosecution; and (7) use of judicial process with an ulterior purpose.[3] Further, Plaintiff states that Defendants State of Nevada, NTA, DPS, and the Office of the Attorney General failed to provide proper training to their employees.[4]

## II.   Legal Standard

Defendants seek dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the Federal Rule of Civil Procedure 8(a)(2) notice pleading standard. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule 8(a)(2) pleading standard does not require detailed factual allegations; however, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a

---

[3] Plaintiff lists the absence of qualified immunity and good faith as a claim for relief. However, qualified immunity is not a claim for which relief can be granted. Instead, it is a defense that State Defendants can raise in response to Plaintiff's claims. Plaintiff acknowledges that this claim is an extension of her other claims. (Pl.'s Opp. Mot. Dismiss (#46) 11:2-3, 11:13-15.)

Further, Plaintiff asserts that State Defendants harassed her. (Pl.'s Opp. Mot. Dismiss (#46) 11:18-21.) Plaintiff attempts to state the claim of harassment under Nevada Revised Statutes section 200.571(1). However, Nevada Revised Statutes section 200.571(1) is a criminal statute, and Nevada law does not provide for a claim of civil harassment. Consequently, the court will dismiss Plaintiff's harassment claim.

Plaintiff also lists inducing a lawsuit as a cause of action. (First Am. Compl. (#40) ¶ 111-14.) Since Plaintiff has not clarified under which law she is stating this claim and has not pointed to any precedent stating a claim for inducing a lawsuit under Nevada law, the court will dismiss this claim.

Finally, Plaintiff alleges a claim of false report by a public officer, claiming that Defendants Tolotti and Buell knowingly made false and misleading statements in an official report to cause false charges to be filed against Plaintiff. (First Am. Compl. (#40) ¶ 116.) Because false report by public officer is not an independent cause of action for which relief can be granted under Nevada law, the court will dismiss this claim.

[4] Plaintiff also seeks an injunction from retaliation by State Defendants. (First Am. Compl. (#40) ¶¶ 125-129.) However, an injunction is not an independent claim for relief.

cause of action" will not suffice. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 1949 (internal quotation marks omitted).  A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the misconduct alleged. *See id.* at 1949-50.  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 1949 (internal quotation marks and citation omitted).

In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as true. *Id.* (citation omitted). However, "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1951) (alteration in original) (internal quotation marks omitted).  The court discounts these allegations because they do "nothing more than state a legal conclusion – even if that conclusion is cast in the form of a factual allegation." *Id.* (citing *Iqbal*, 129 S. Ct. at 1951.)  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949).

**III.    Discussion**

State Defendants have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that (1) Defendants McGlamery and the Office of the Attorney General are entitled to prosecutorial immunity, (2) all State Defendants are entitled to the Eleventh

Amendment Immunity, and (3) Plaintiff's complaint fails to state a claim upon which relief can be granted.[5] The court will address each of these arguments below.

**A. Prosecutorial Immunity**

State Defendants argue that the court should dismiss both the constitutional and state law claims against Deputy Attorney General McGlamery and the Attorney General's Office because these State Defendants are entitled to prosecutorial immunity.

A prosecuting attorney enjoys absolute immunity from liability for his conduct in "pursuing a criminal prosecution" insofar as he acts within his role as an "advocate for the State" and his actions are "intimately associated with the judicial phase of the criminal process."[6] *Cousins v. Lockyer*, 568 F.3d 1063, 1068 (9th Cir. 2009) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 410, 430-31 (1976)). Absolute prosecutorial immunity applies even when it leaves "the genuinely wronged defendant without civil redress against a prosecutor whose malicious and dishonest action deprives him of liberty." *Imbler*, 424 U.S. at 427.

The court finds the acts that Plaintiff claims violated her rights fall within the scope of the Attorney General's duties as a criminal prosecutor. The Attorney General's Office and McGlamery filed criminal charges against Plaintiff and presented the State's case in court. These actions are directly connected to the performance of their prosecutorial duties. Because a prosecutor has absolute immunity for the decision to prosecute a particular case, *Burnes v. Reed*, 500 U.S. 478, 486 (1991), and because Plaintiff did not plead any facts suggesting that McGlamery acted beyond

---

[5] Defendants also assert that State Defendants are entitled to qualified immunity. As discussed below, Plaintiff has failed to state a claim for the violation of her constitutional rights. "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Pearson v. Callahan*, 129 S. Ct. 808, 816 (2009). As such, based on the allegations in the complaint, State Defendants are entitled to qualified immunity.

[6] This rule applies to claims stated under both 42 U.S.C. § 1983 and state law. *See Nevada v. Dist. Court (Ducharm)*, 55 P.3d 420, 424 n.17 (Nev. 2002) (holding that Nevada subscribes to the rule of *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976), that "in initiating a prosecution and in presenting the State's case," prosecutors are absolutely immune from damages).

his prosecutorial role, the court finds that, under the facts alleged in the complaint, McGlamery and the Attorney General's Office are entitled to prosecutorial immunity on all Plaintiff's claims.

### B. Eleventh Amendment Immunity

Defendants further argue that all State Defendants are entitled to Eleventh Amendment immunity. State Defendants are comprised of the State of Nevada itself, state agencies, and individuals in their professional and individual capacities. As such, the court will address the applicability of the Eleventh Amendment to each of these groups separately.

Under the Eleventh Amendment, in the absence of a waiver by the state or a valid congressional override, the state and its agencies are immune from private damage actions or suits for injunctive relief brought in federal court. *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999). "Nevada has explicitly refused to waive its immunity to suit under the Eleventh Amendment." *O'Connor v. Nevada*, 686 F.2d 749, 750 (9th Cir. 1982); *see also* Nev. Rev. Stat. § 41.031(3) (preserving Eleventh Amendment immunity). Nevada's retention of Eleventh Amendment immunity "bars all actions against Nevada in federal court, including those brought by Nevada residents." *Romano v. Bible*, 169 F.3d 1182, 1185 (9th Cir. 1999); *O'Connor*, 686 F.2d at 750. For this reason, the court will dismiss Plaintiff's claims against the State of Nevada. Moreover, since NTA, DPS, and the Office of the Attorney General are state agencies, the court finds that the Eleventh Amendment bars all of Plaintiff's claims against them.

As to the claims against Defendants Tolotti, Buell, McGlamery, and Prowse, Plaintiff alleges that these Defendants infringed her civil rights and committed numerous violations of state law while acting in their official capacities as officers and employees of the State of Nevada and its agencies. (First Am. Compl. (#40) ¶¶ 57, 62, 70.) The Eleventh Amendment bars federal courts from hearing claims for damages brought against state officers who are sued in their official capacities. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). To the extent that Plaintiff alleges Defendants Tolotti, Buell, McGlamery, and Prowse acted in their official

capacities, the court finds that the Eleventh Amendment bars Plaintiff's claims against them.

However, Plaintiff has also sued Defendants Tolotti, Buell, McGlamery, and Prowse in their individual capacities. The Eleventh Amendment does not bar § 1983 personal-capacity claims against state officers in federal courts. *See Hafer v. Melo*, 502 U.S. 21, 30-31 (1991). Consequently, the Eleventh Amendment does not shield individual State Defendants from Plaintiff's claims in their personal capacities.

### C. Failure to State a Claim

Determining whether a complaint states a claim for relief is a context-specific task that requires the court to draw on its judicial experience and common sense. *Iqbal*, 129 S. Ct. at 1950. The court will review each count alleged to determine whether Plaintiff has stated a claim upon which relief can be granted.

#### 1. Constitutional Claims

In Count One, Plaintiff alleges, pursuant to 42 U.S.C. § 1983, that State Defendants, acting under color of law, deprived Plaintiff of her liberty in violation of her substantive due process rights guaranteed by the Fourteenth Amendment. (First Am. Compl. (#40) ¶¶ 57-58.) In particular, Plaintiff claims her seizure and subsequent arrest infringed upon her substantive due process rights.

However, a claim alleging that an arrest and prosecution lacked probable cause must be brought under the Fourth Amendment and not as a substantive due process claim. *Albright v. Oliver*, 510 U.S. 266, 274-75 (1994) (noting that where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a claim); *see also Sanders v. City of San Diego*, 93 F.3d 1423, 1429 (9th Cir.1996) (noting that compliance with the Fourth Amendment in the context of criminal prosecution satisfies due process as well). Consequently, the court will dismiss Plaintiff's claim stated under the Fourteenth Amendment and evaluate Plaintiff's allegations under the Fourth Amendment.

Plaintiff alleges, pursuant to 42 U.S.C. § 1983, that in violation of her Fourth Amendment rights, State Defendants, acting under the color of law, unlawfully arrested, imprisoned, and prosecuted Plaintiff without probable cause.[7]  (First Am. Compl. (#40) ¶ 62.)

The Fourth Amendment guarantees the right to be free from unreasonable seizures.  U.S. Const. amend. IV.  To establish a Fourth Amendment violation, Plaintiff must show her arrest lacked probable cause.  *See Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990).  "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."  *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983).  The standard is not one of absolute certainty, but of "fair probability" that the suspect was involved in criminal behavior.  *United States v. Potter*, 895 F.2d 1231, 1233 (9th Cir. 1990).  As a civil litigant, Plaintiff bears the burden of pleading facts that prove the absence of probable cause.  *See Gilker v. Baker*, 576 F.2d 245, 246 (9th Cir. 1978).  In a § 1983 action, only the objective conduct of Defendants is relevant; the subjective intent is disregarded.  *See Whren v. United States*, 517 U.S. 806, 814 (1996).

In the present case, Plaintiff claims that the facts alleged against Plaintiff at the time of the arrest would not lead a reasonable person to believe or entertain an honest and strong suspicion that Plaintiff was guilty of the crimes charged. (First Am. Compl. (#40) ¶ 63.)  To support this assertion, Plaintiff alleges that the investigation that led to her arrest was based on a complaint that NTA recommended for closure. (First Am. Compl. (#40) ¶ 46.)  Moreover, Plaintiff alleges that NTA and the Office of the Attorney General closed or dismissed all previous complaints against her. (First Am. Compl. (#40) ¶ 39.)

The court finds that the facts alleged by Plaintiff do not suggest that Defendants acted without probable cause in arresting, indicting, and prosecuting Plaintiff.  Specifically, NTA based its recommendation to close Brito's complaint not on the finding that Plaintiff did not violate the

---

[7]Plaintiff also alleges as part of this claim that State Defendants set into motion the unlawful arrest, indictment, and criminal prosecution of Plaintiff with malice.  (First Am. Compl. (#40) ¶ 62.)  This is essentially a claim for malicious prosecution, which the court analyzes below.

law, but because the statute of limitations barred NTA from prosecuting the complaint. (First Am. Compl. (#40) ¶ 39.) Moreover, Plaintiff was arrested on the basis of Defendant Prowse's sworn affidavit describing the results of Prowse's investigation of complaints filed by Brito and Avisbudget Rental Car Group. (Prowse Aff., Ex. 2 (#1-2).)[8] The investigation of these complaints showed that in both cases, while the alleged owners were trying to recover the vehicles, Plaintiff submitted abandoned vehicle forms to the DMV and then sold the vehicles at a public auction to herself for $0. (Prowse Aff., Ex. 2 (#1-2).) Prowse's affidavit, which provided a basis for Plaintiff's arrest, was based on two sworn complaints, DMV records, and interviews with witnesses. (Prowse Aff., Ex. 2 (#1-2).) These facts support a finding that State Defendants had probable cause for arresting, and prosecuting Plaintiff. The court finds that Plaintiff has failed to meet her burden of pleading factual allegations that demonstrate the absence of probable cause. Accordingly, the court will dismiss this claim.

### 2. Conspiracy

Plaintiff's fourth cause of action asserts that State Defendants acted in concert with the intent to deprive Plaintiff of her constitutional rights. (First Am. Compl. (#40) ¶ 81.) Under Nevada law, an actionable civil conspiracy "consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damages results from the act or acts." *Hilton Hotels Corp. v. Butch Lewis Prods*., 862 P.2d 1207, 1210 (Nev. 1993) (citing *Sutherland v. Gross*, 772 P.2d 1287, 1290 (Nev. 1989)). To prevail in a civil conspiracy action, a plaintiff has to prove an explicit or tacit agreement between the tortfeasors. *GES, Inc. v. Corbitt*, 21 P.3d 11, 15 (Nev. 2001).

///

---

[8]Prowse's Affidavit is attached as an exhibit to Plaintiff's complaint. As such, Prowse's Affidavit is a "material which is properly submitted as part of the complaint" and falls under the exception to the general rule that a district court may not consider any material beyond the pleadings in a ruling on a 12(b)(6) motion. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

1    Defendants argue that Plaintiff does not offer factual allegations that suggest an agreement
2 between the actors. (Defs.' Mot. Dismiss (#21) 6:12-14.) The court agrees. The complaint
3 involves numerous individuals employed by several different state agencies. However, nowhere in
4 the complaint does Plaintiff allege specific facts suggesting the existence of an agreement between
5 State Defendants. In the absence of any facts pointing the court towards the existence of an
6 agreement between State Defendants to harm Plaintiff, the claim of conspiracy remains mere
7 speculation. As a result, the court will dismiss this claim.

### 3.    Intentional Infliction of Emotional Distress

In Count Five, Plaintiff claims that Defendants threatened and harassed Plaintiff with the intention of or reckless disregard for inflicting emotional distress on Plaintiff. (First Am. Compl. (#40) ¶ 86.) To state a claim for intentional infliction of emotional distress, Plaintiff must establish the following elements: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff having suffered severe or extreme emotional distress and (3) actual or proximate causation." *See Olivero v. Lowe*, 995 P.2d 1023, 1025 (Nev. 2000) (citations omitted). Extreme and outrageous conduct "is that which is 'outside all possible bounds of decency' and is regarded as 'utterly intolerable in a civilized community.'" *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (citations omitted).

The complaint asserts that the conduct of State Defendants resulting in Plaintiff's arrest was extreme and outrageous. (First Am. Compl. (#40) ¶ 86.) To support this conclusion, Plaintiff points to threats, intimidation, unannounced visits and phone calls, along with a promise to ensure that NHP did not renew Plaintiff's rotations if she did not comply with Defendants' demands. (Pl.'s Opp. Mot. Dismiss (#46) 12:5-11.) While the specific factual allegations in Plaintiff's complaint raise a possibility of wrongdoing, the alleged acts of Defendants do not fall outside all possible bounds of decency or support an inference of extreme and outrageous conduct that is required to state a claim for intentional infliction of emotional distress.

Moreover, Plaintiff does not allege in the complaint any specific facts supporting the conclusion that she suffered severe and extreme emotional distress.  Plaintiff only asserts that as a result of Defendants' conduct, Plaintiff feared that she would lose her livelihood.  (Pl.'s Opp. Mot. Dismiss (#46) 12:11-15.)  However, general discomfort is insufficient to state a claim for intentional infliction of emotional distress.  *Chowdhry v. NLVH, Inc.*, 851 P.2d 459, 462 (Nev. 1993).  In the absence of any facts demonstrating the extent and severity of Plaintiff's emotional distress, the court finds that Plaintiff has not stated a claim for intentional infliction of emotional distress.  Consequently, the court will dismiss this claim.

### 4. Intentional Interference with Contractual Relations

Plaintiff further alleges that Defendants Tolotti, Buell, and Prowse intentionally caused Plaintiff's arrest knowing that such an arrest would disrupt Plaintiff's existing and/or prospective economic advantage with NHP and CCSO.  (First Am. Compl. (#40) ¶ 93.)  "To establish intentional interference with contractual relations, the plaintiff must show: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *Sutherland*, 772 P.2d at 1290.

In the present case, Plaintiff alleges that prior to the arrest, she had a contract with NHP and CCSO and that after her arrest, NHP and CCSO took her company off their rotations.  (First Am. Compl. (#40) ¶¶ 37, 91.)  As to Defendant Buell, Plaintiff alleges that Buell threatened to make sure that NHP did not renew the contract with Plaintiff's towing company.  (First Am. Compl. (#40) ¶ 37.)  This suggests that Buell knew about Plaintiff's contract with NHP and intended to disrupt Plaintiff's business with NHP.  Accordingly, the court finds that Plaintiff has stated a claim of intentional interference with contractual relations against Defendant Buell.

///

However, Plaintiff does not allege any facts suggesting that Defendants Tolotti and Prowse knew of her contract with NHP or CCSO. Moreover, although Plaintiff claims that Tolotti and Prowse intended to disrupt her existing contractual relations, the complaint does not allege facts to support this conclusion. Because Plaintiff has not alleged facts indicating that Tolotti and Prowse knew about the existence of Plaintiff's contracts and intended to disrupt Plaintiff's contractual relations, the court will dismiss Plaintiff's claim for intentional interference with contractual relations against Tolotti and Prowse.

### 5. Intentional Interference with Prospective Economic Advantage

A cause of action for interference with prospective economic advantage requires the following: "(1) a prospective contractual relationship between the plaintiff and third party; (2) knowledge by the defendant of prospective relationship; (3) intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct." *Wichinsky v. Mosa*, 847 P.2d 727, 729-30 (Nev. 1993) (citing *Leavitt v. Leisure Sports, Inc.*, 734 P.2d 1221, 1221 (Nev. 1987)).

Here, Plaintiff fails to allege facts suggesting that State Defendants acted in the absence of privilege or justification. Accordingly, the court will grant Defendants' request to dismiss the claim of interference with prospective economic advantage.

### 6. Malicious Prosecution

Plaintiff's seventh cause of action alleges that Defendants McGlamery, Tolotti, Buell, and Prowse maliciously prosecuted Plaintiff. Under Nevada law, to prevail on the claim of malicious prosecution, Plaintiff must prove (1) that Defendants lacked probable cause to commence the criminal proceeding against Plaintiff, and (2) that Defendants acted with malice. *See Lamantia v. Redisi*, 38 P.3d 877, 879 (Nev. 2002). A malicious prosecution claim requires that the defendant initiated or actively participated in the continuation of a criminal proceeding against the plaintiff. *Lamantia*, 38 P.3d at 879-80.

In alleging this cause of action, Plaintiff predominantly focuses on the actions of Defendant McGlamery in commencing the criminal suit against Plaintiff.[9] (First Am. Compl. (#40) ¶ 98-100.) Regarding Defendants Tolotti, Buell, and Prowse, Plaintiff only alleges that they caused a criminal action to be filed against her. (First Am. Compl. (#40) ¶ 98.) As previously discussed, Plaintiff has failed to allege facts suggesting that these Defendants lacked probable cause. A finding of probable cause "requires a conclusion that malice is nonexistent." *Rashidi v. Albright*, 818 F. Supp. 1354, 1360 (D. Nev. 1993). Accordingly, the court will dismiss Plaintiff's claim of malicious prosecution.

### 7. Abuse of Process

In Count Eight, Plaintiff claims that Defendants abused judicial process in initiating a criminal lawsuit against her. The elements of an abuse of process claim are (1) an ulterior purpose by the defendants other than resolving a legal dispute and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceedings. *Lamantia*, 38 P.3d at 879. Abuse of process can arise from both civil and criminal proceedings. *See* Restatement (Second) of Torts § 682 (1977). However, malice, lack of probable cause, and termination in favor of the person initiating the proceedings are not necessary elements for a claim of abuse of process. *Lamantia*, 38 P.3d at 879.

Plaintiff asserts that Defendants Tolotti, Buell, and Prowse acted with the ulterior purpose of punishing her for uncovering a fraudulent insurance scheme. (Pl.'s Opp. Mot. Dismiss (#46) 14:10-12.) To support these assertions, Plaintiff alleges that the threats to report her to the Office of the Attorney General started immediately after Plaintiff reported to Buell her findings about fake identification cards. (First Am. Compl. (#40) ¶¶ 34-40.) Further, Plaintiff alleges that Tolotti, on his own initiative, referred to the Office of the Attorney General a complaint about Plaintiff that

---

[9]As the court previously determined, prosecutorial immunity bars all Plaintiff's claims against McGlamery.

NTA recommended for closure. (First Am. Compl. (#40) ¶ 39.) Moreover, Tolotti referred the complaint with the knowledge that NTA and the Office of the Attorney General previously dismissed similar complaints against Plaintiff without a finding of any wrongdoing on Plaintiff's behalf. (First Am. Compl. (#40) ¶ 38.) As to Defendant Prowse, Plaintiff alleges that Prowse recommended filing criminal charges against her based on previously closed complaints. (First Am. Compl. (#40) ¶ 45.)

The facts of the complaint, taken in the light most favorable to Plaintiff, suggest that Defendants could have used the legal process for improper purposes rather than as part of their job duties. As a result, the court will deny Defendants' request to dismiss this claim.

IT IS THEREFORE ORDERED that State Defendants' Motion to Dismiss (#21) is hereby GRANTED in part and DENIED in part.

IT IS SO ORDERED.

DATED this 1st day of July, 2010.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE