UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

DAIANA AZPILCUETA, individually and on behalf of CAL-NEVA TRANSPORT & TOW, INC., a Nevada corporation,

Plaintiffs,

v.

THE STATE OF NEVADA, ex. rel. TRANSPORTATION AUTHORITY, a division of the Department of Business and Industry, DEPARTMENT OF PUBLIC SAFETY, OFFICE OF THE ATTORNEY GENERAL, and CITY OF CARSON CITY, a municipality of the State of Nevada; STEVEN SCHUETTE, in both his professional and individual capacity; STEVE ALBERTSEN, in both his professional and individual capacity; CHARLES TOLOTTI, in both his professional and individual capacity; DEAN BUELL, in both his professional and individual capacity; JOHN MCGLAMERY, in both his professional and individual capacity; WILLIAM PROWSE, in both his professional and individual capacity; KEVIN MCCOY, in both his professional and individual capacity; The PROGRESSIVE CORPORATION dba PROGRESSIVE CASUALTY INSURANCE COMPANY, an Ohio corporation; GALE LUNDEEN, an individual; MARCOS BRITO, an individual; and DOE DEFENDANTS 1-50,

Defendants.

3:09-CV-00593-LRH-VPC

ORDER

Before the court is Defendant Gale Lundeen's Motion for Judgment on the Pleadings (#67[1]). Plaintiff Daiana Azpilcueta, individually and on behalf of Cal-Neva Transport & Tow, Inc., ("Plaintiff") has filed an opposition (#70) to which Lundeen replied (#73).

## I. Facts and Procedural History[2]

This action arose out of Plaintiff's operation of a towing company and an impound yard in Carson City, Nevada, from 2004 until 2009. Plaintiff opened Cal-Neva Transport & Tow, Inc. for business in February, 2004. (First Am. Compl. (#40) ¶ 23.) Plaintiff alleges that over the course of the next five years, Lundeen and other defendants harassed, arrested, indicted, and prosecuted Plaintiff because of her towing company's policy for the release of impounded vehicles. (First Am. Compl. (#40) ¶¶ 30-31.) Prior to releasing a towed or impounded vehicle, Plaintiff required the owner of the vehicle to show proof of valid driver's license, insurance, and registration. (First Am. Compl. (#40) ¶ 31.)

Furthermore, Plaintiff alleges that Lundeen harassed and threatened Plaintiff because she discovered and exposed a fraudulent insurance scheme involving Lundeen's employer, Progressive Insurance Company ("Progressive"). (First Am. Compl. (#40) ¶¶ 1, 19.) Beginning in January, 2005, Plaintiff noticed an abundance of fake identification cards, registration, and insurance paperwork from people trying to pick up impounded vehicles. (First Am. Compl. (#40) ¶ 33.) Plaintiff alleges that Lundeen, who at all times was employed by Progressive, caused the fraudulent identification cards to be issued so that he could issue insurance policies and registration to illegal immigrants. (First Am. Compl. (#40) ¶ 19.)

///

---

[1]Refers to the court's docket entry number.

[2]The following facts are primarily taken from the complaint. Because the court considers this case on a motion for judgement on pleadings, the court accepts the allegations in the complaint as true. *See Fajardo v. County of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999).

In April, 2007, the Department of Public Safety ("DPS") asked Plaintiff to participate in a sting operation as a citizen informant and provide information she obtained about the fake identification cards. (First Am. Compl. (#40) ¶ 34.) In early May, 2007, Plaintiff met with Dean Buell, a DPS employee, and told him about her discoveries. (First Am. Compl. (#40) ¶ 35.)

Shortly after Plaintiff reported to DPS her findings about Progressive and Lundeen's insurance scheme, employees of several state agencies allegedly threatened to report Plaintiff to the Office of the Attorney General if she did not stop her practices for releasing impounded vehicles. (First Am. Compl. (#40) ¶¶ 36-38.)

On October 22, 2008, the Attorney General's Office filed a criminal complaint against Plaintiff. (First Am. Compl. (#40) ¶ 47.) Plaintiff was subsequently arrested and charged with embezzlement, attempting to commit theft by embezzlement, and conspiracy to commit theft by embezzlement. (First Am. Compl. (#40) ¶ 42.) After the arrest, various newspapers published Plaintiff's name, picture, and a description of charges against her, asking people to come forward if they had been wronged by Plaintiff. (First Am. Compl. (#40) ¶ 44.) Moreover, Lundeen placed Plaintiff's name, picture, and a description of charges against her on the wall of his office. (Am. Compl. (#40) ¶ 44.)

After a preliminary hearing on February 27, 2009, the court dismissed the charges against Plaintiff, concluding that there was no evidence that Plaintiff committed a crime. (First Am. Compl. (#40) ¶¶ 49-50.) However, Plaintiff alleges that the harassment against her continued after the dismissal of the charges. (First Am. Compl. (#40) ¶ 53.)

**II. Legal Standard**

Lundeen has moved for a judgement on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). "Judgment on the pleadings is proper when there are no issues of material fact, and the moving party is entitled to judgment as a matter of law." *General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th

Cir. 1989) (citing Fed. R. Civ. P. 12(c)). "In ruling on a motion for judgment on the pleadings, district courts must accept all material allegations of fact alleged in the complaint as true, and resolve all doubts in favor of the non-moving party." *Religious Tech. Ctr. v. Netcom On-Line Comm. Servs., Inc.*, 907 F.Supp. 1361, 1381 (N.D. Cal. 1995).

A Rule 12(c) motion is the functional equivalent of a 12(b)(6) motion and is therefore decided according to the same principles as a 12(b)(6) motion to dismiss. *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Accordingly, a complaint must satisfy the Federal Rule of Civil Procedure 8(a)(2) notice pleading standard. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule 8(a)(2) pleading standard does not require detailed factual allegations; however, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 1949 (internal quotation marks omitted). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the misconduct alleged. *See id.* at 1949-50. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 1949 (internal quotation marks and citation omitted).

In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as true. *Id.* (citation omitted). However, "bare assertions . . . amount[ing] to nothing more than a formulaic

recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1951) (alteration in original) (internal quotation marks omitted). The court discounts these allegations because they do "nothing more than state a legal conclusion – even if that conclusion is cast in the form of a factual allegation." *Id.* (citing *Iqbal*, 129 S. Ct. at 1951.) "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949).

## III. Discussion

Plaintiff claims that Lundeen (1) conspired with the other defendants with the intent to deprive Plaintiff of her constitutional rights and (2) intentionally inflicted emotional distress on Plaintiff.[3] The court will address each of these claims below.

### A. Conspiracy

Plaintiff's first cause of action asserts that Lundeen acted in concert with the other defendants with the intent to deprive Plaintiff of her constitutional rights. (First Am. Compl. (#40) ¶ 81.) Under Nevada law, an actionable civil conspiracy "consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damages results from the act or acts." *Hilton Hotels Corp. v. Butch Lewis Prods.*, 862 P.2d 1207, 1210 (Nev. 1993) (citing *Sutherland v. Gross*, 772 P.2d 1287, 1290 (Nev. 1989)). To prevail in a civil conspiracy action, a plaintiff has to prove an explicit or tacit agreement between the tortfeasors. *GES, Inc. v. Corbitt*, 21 P.3d 11, 15 (Nev. 2001).

Lundeen argues that the complaint merely undertakes "a formulaic recitation of the elements" of a claim for civil conspiracy. (Def.'s Mot. Dismiss (#67) 4:10-12.) The court agrees.

---

[3]Plaintiff also seeks an injunction from retaliation by Lundeen. (First Am. Compl. (#40) ¶¶ 125-129.) However, an injunction is not an independent claim for relief.

The complaint fails to allege facts suggesting the existence of an agreement between Lundeen and the other defendants. While the Plaintiff alleges that Lundeen participated in Progressive's insurance scheme, there are no factual allegations in the complaint supporting the inference of an agreement or meeting of the minds between Lundeen and Progressive to harm Plaintiff for exposing their insurance scheme. Moreover, the only factual allegation in the complaint showing any connection between Lundeen and any of the other defendants is the statement by Buell that Lundeen was Buell's insurance agent. (First Am. Compl. (#40) ¶ 35.)

In the absence of factual allegations indicating the existence of an agreement between Lundeen and the other defendants, the claim of conspiracy remains mere speculation. Accordingly, the court will dismiss this claim.

**B. Intentional Infliction of Emotional Distress**

In the second cause of action, Plaintiff claims that Lundeen consistently threatened and harassed Plaintiff with the intention of or reckless disregard for inflicting emotional distress on Plaintiff. (First Am. Compl. (#40) ¶ 86.) To state a claim for intentional infliction of emotional distress, Plaintiff must establish the following elements: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff having suffered severe or extreme emotional distress and (3) actual or proximate causation." *See Olivero v. Lowe*, 995 P.2d 1023, 1025 (Nev. 2000) (citations omitted). Extreme and outrageous conduct "is that which is 'outside all possible bounds of decency' and is regarded as 'utterly intolerable in a civilized community.'" *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998).

Lundeen asks the court to dismiss this claim because Plaintiff does not allege any facts supporting the allegation that Lundeen consistently harassed and threatened Plaintiff. (Def.'s Mot. Dismiss (#67) 5:4-5.) In fact, while the complaint alleges specific instances of threats made to Plaintiff by several employees of state agencies, the complaint fails to mention any instances of such wrongdoing by Lundeen.

The only factual allegation supporting Plaintiff's claim of intentional infliction of emotional distress is the assertion that, after Plaintiff's arrest, Lundeen placed on his office wall the name, picture, and a description of criminal charges against Plaintiff. (First Am. Compl. (#40) ¶ 44.) The court finds that posting information about Plaintiff's arrest on the wall of an office selling car insurance does not fall outside all possible bounds of human decency. As Lundeen points out, it is common for banks, post offices and other establishments to post information of criminal activity on their walls. (Def.'s Mot. Dismiss (#67) 5:11-12.) In the absence of any other factual allegations, the court finds that Lundeen's behavior does not amount to extreme and outrageous conduct necessary to state a claim for intentional infliction of emotional distress.

Moreover, Plaintiff does not allege any specific facts demonstrating the extent and severity of Plaintiff's emotional distress. As a result, the court finds that Plaintiff has not stated a claim for intentional infliction of emotional distress. Accordingly, the court will dismiss this claim.

IT IS THEREFORE ORDERED that Lundeen's Motion for Judgement on the Pleadings (#67) is hereby GRANTED.

IT IS SO ORDERED.

DATED this 19th day of July, 2010.

LARRY R. HICKS
UNITED STATES DISTRICT JUDGE