UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DAIANA AZPILCUETA, individually and on behalf of CAL-NEVA TRANSPORT & TOW, INC., a Nevada corporation,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>JERALD L. HAFEN, individually and as Director of the Nevada Division of Public Safety; TONY ALMAREZ, individually and as Chief of the Nevada Highway Patrol; CATHERINE CORTEZ MASTO, individually and as the Nevada Attorney General; CHARLES TOLOTTI, in both his professional and individual capacity; DEAN BUELL, in both his professional and individual capacity; JOHN MCGLAMERY, in both his professional and individual capacity; WILLIAM PROWSE, in both his professional and individual capacity; CITY OF CARSON CITY, a municipality of the State of Nevada; KEN FURLONG, individually and as Sheriff of Carson City; STEVEN SCHUETTE, in both his professional and individual capacity; STEVE ALBERTSEN, in both his professional and individual capacity; KEVIN MCCOY, in both his professional and individual capacity; MARCOS BRITO, an individual; and DOE DEFENDANTS 1-50,<br><br>　　　　　Defendants. | 3:09-CV-00593-LRH-VPC<br><br>ORDER |

Before the court is Defendants Jerald L. Hafen, Tony Almarez, Catherine Cortez Masto, Charles Tolotti, Dean Buell, John McGlamery, and William Prowse's (collectively "State Defendants") Motion to Dismiss (#122[1]). Plaintiff Daiana Azpilcueta, individually and on behalf of Cal-Neva Transport & Tow, Inc., ("Plaintiff") has filed an opposition (#124), to which State Defendants replied (#127).

## I. Facts and Procedural History[2]

This action arose out of Plaintiff's operation of a towing company and an impound yard in Carson City, Nevada, from 2004 until 2009. Plaintiff opened Cal-Neva Transport & Tow, Inc. for business in February 2004. Plaintiff alleges that during the next five years, State Defendants, individually and collectively, threatened to run Plaintiff out of business and cancel her rotations with Nevada Highway Patrol ("NHP") and the Carson City Sheriff's Office ("CCSO") and harassed and intimidated Plaintiff and her employees. State Defendants also allegedly investigated Plaintiff's business practices, obtained an arrest warrant for Plaintiff based on a false affidavit, and indicted and prosecuted Plaintiff for practices they knew or should have known were lawful.

Plaintiff alleges that her company's policy for the release of impounded vehicles caused the harassment, arrest, indictment, and prosecution. Prior to releasing a towed or impounded vehicle, Plaintiff required the owner of the vehicle to show proof of valid driver's license, insurance, and registration. Plaintiff alleges that this policy was consistent with instructions received from both NHP and the CCSO.

Furthermore, Plaintiff alleges that Defendants harassed and threatened Plaintiff because she

---

[1] Refers to the court's docket entry number.

[2] The court has taken the following facts primarily from the Second Amended Complaint. Because the court considers this case on a motion to dismiss, the court accepts the well-pleaded factual allegations in the complaint as true. *See Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008).

2

discovered and exposed a fraudulent insurance scheme involving Progressive Insurance Company. Specifically, starting in January 2005, Plaintiff noticed an abundance of fake driver's licenses from people trying to pick up impounded vehicles and that a majority of the insurance policies for those with fake licenses were issued by Progressive.

In April 2007, upon the request the Department of Public Safety ("DPS"), Plaintiff participated in a sting operation as a citizen informant. Plaintiff provided information about fake identifications and insurance documents to Defendant Buell, an employee of DPS. In September 2007, Buell strongly suggested that Plaintiff should stop asking for valid driver's licenses. In October 2007, Buell allegedly called Plaintiff and ordered her to stop asking for valid driver's licenses. Buell also told Plaintiff that if she did not stop her practices, he would refer her to the Office of the Attorney General.

Shortly thereafter, Defendant Tolotti, an investigator with the Nevada Transportation Authority ("NTA"), visited Plaintiff's company. Tolotti told Plaintiff about a call complaining about Plaintiff's procedures for releasing impounded vehicles. Tolotti also informed Plaintiff that if she did not stop asking for driver's licenses, he would notify the Attorney General's Office. Although Tolotti had previously investigated multiple complaints about Plaintiff's policy, NTA had closed or dismissed all the complaints without finding that Plaintiff violated any law.

On February 12, 2008, NTA received another complaint about Plaintiff's policy from Defendant Brito, an individual who unsuccessfully attempted to retrieve from Plaintiff a motorcycle he claimed was his. NTA's investigation report recommended closure of Brito's complaint due to a statute of limitations issue. Despite this recommendation, NTA and Tolotti forwarded Brito's complaint to the Office of the Attorney General. In September 2008, Tolotti visited Plaintiff again and told her to cease asking for valid driver's licenses.

Defendant Prowse, a forensic investigator with the Attorney General's Office, investigated Brito's complaint. On October 22, 2008, on the basis of Prowse's investigation, Deputy Attorney

General McGlamery filed a criminal complaint against Plaintiff. Plaintiff was subsequently arrested for embezzlement, attempting to commit theft by embezzlement, and conspiracy to commit theft by embezzlement. Various newspapers published Plaintiff's name, picture, and a description of charges against her, and asked people to come forward if they had been wronged by Plaintiff. As a result of the arrest, CCSO and NHP took Plaintiff's company off their rotations.

On February 27, 2009, after a two-day preliminary hearing, the court dismissed the charges against Plaintiff, concluding that there was no evidence that Plaintiff committed a crime. Following dismissal of the charges, Plaintiff's company was reinstated to the CCSO and NHP rotations; however, Plaintiff alleges that the harassment continued. Specifically, an unidentified officer of CCSO informed her that all CCSO officers were ordered not to impound vehicles while Plaintiff's towing company was on its rotation, Plaintiff's company has allegedly never received the same treatment as other towing companies, and NHP and CSO adopted policies of impounding fewer vehicles, diminishing the number of tows and impounds referred to Plaintiff's company.

The court previously granted in part and denied in part the State Defendants' motion to dismiss Plaintiff's First Amended Complaint and granted leave to amend. (Doc. #100, 113.) Now before the court is Plaintiff's Second Amended Complaint, which alleges the following claims for relief against State Defendants: (1) violation of Plaintiff's Fourth Amendment right to be free from arrest without probable cause; (2) conspiracy; (3) intentional infliction of emotional distress; (4) intentional interference with contractual relations and prospective economic advantage; (5) malicious prosecution; (6) abuse of process; (7) supervisory liability for failure to train and supervise; and (8) violation of Plaintiff's procedural due process rights under the Sixth and Fourteenth Amendments.[3]

---

[3] Plaintiff again includes "Injunctive Relief" as a separately stated claim. As the court previously ruled, however, "an injunction is not an independent claim for relief." (Doc. #100, p. 5 n.4.) It is properly considered only as a request for relief, not an actionable claim. (*See* Doc. #113, p. 4 n.2

4

**II.     Legal Standard**

Defendants seek dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the Federal Rule of Civil Procedure 8(a)(2) notice pleading standard.  *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Rule 8(a)(2) pleading standard does not require detailed factual allegations; however, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* at 1949 (internal quotation marks omitted).  A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the misconduct alleged.  *See id.* at 1949-50.  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* at 1949 (internal quotation marks and citation omitted).

In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as true.  *Id.* (citation omitted).  However, "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1951)

---

("To the extent Plaintiff also seeks an injunction, she may include a request for such relief in the [second] amended complaint.")).

5

(alteration in original) (internal quotation marks omitted). The court discounts these allegations because they do "nothing more than state a legal conclusion – even if that conclusion is cast in the form of a factual allegation." *Id.* (citing *Iqbal*, 129 S. Ct. at 1951.) "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949).

**III.  Discussion**

State Defendants move to dismiss the complaint pursuant to Rule 12(b)(6), arguing that (A) Defendants McGlamery and Masto are entitled to prosecutorial immunity, (B) all State Defendants are entitled to the Eleventh Amendment immunity, (C) all State Defendants are entitled to qualified immunity as to Plaintiff's federal claims, (D) all State Defendants are entitled to discretionary immunity as to Plaintiff's state claims, and (E) Plaintiff's complaint otherwise fails to satisfy the pleading standard of Rule 8(a)(2).

**A.  Prosecutorial Immunity**

State Defendants renew their argument that the court should dismiss both the constitutional and state law claims against Deputy Attorney General McGlamery and Attorney General Masto because these State Defendants are entitled to prosecutorial immunity.

A prosecuting attorney enjoys absolute immunity from liability for his conduct in "pursuing a criminal prosecution" insofar as he acts within his role as an "advocate for the State" and his actions are "intimately associated with the judicial phase of the criminal process."[4] *Cousins v. Lockyer*, 568 F.3d 1063, 1068 (9th Cir. 2009) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 410, 430-31 (1976)). Absolute prosecutorial immunity applies even when it leaves "the genuinely

---

[4]This rule applies to claims stated under both 42 U.S.C. § 1983 and state law. *See Nevada v. Dist. Court (Ducharm)*, 55 P.3d 420, 424 n.17 (Nev. 2002) (holding that Nevada subscribes to the rule of *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976), that "in initiating a prosecution and in presenting the State's case," prosecutors are absolutely immune from damages).

6

1  wronged defendant without civil redress against a prosecutor whose malicious and dishonest action
2  deprives him of liberty." *Imbler*, 424 U.S. at 427.

3  In considering Plaintiff's First Amended Complaint, the court previously determined that
4  prosecutorial immunity applied because a prosecutor has absolute immunity for the decision to
5  prosecute a particular case, *see Burnes v. Reed*, 500 U.S. 478, 486 (1991), and because Plaintiff did
6  not plead any facts suggesting that McGlamery acted beyond his prosecutorial role in filing
7  criminal charges against Plaintiff and presenting the State's case in court.  (Doc. #100, pp. 7-8; *see*
8  *also* Doc. #113, p. 3.)  In her Second Amended Complaint, Plaintiff repeats those allegations and
9  adds new allegations regarding investigative activities undertaken by McGlamery in July 2008,
10 months prior to McGlamery's activities in filing criminal charges and obtaining an arrest warrant
11 on October 22 and 24, respectively.  (Doc. #117, ¶ 32(i)-(k).)

12 To the extent Plaintiff's claims are predicated on quasi-judicial activities—including
13 determining that probable cause exists to initiate a prosecution, filing criminal charges, obtaining
14 an arrest warrant, and presenting the State's case in court—the court reaffirms its prior decision that
15 McGlamery and Masto are entitled to absolute immunity.  *See Kalina v. Fletcher*, 522 U.S. 118,
16 129 (1997) (holding that a prosecutor's activities in connection with the preparation and filing of an
17 information and motion for an arrest warrant are protected by absolute immunity).  By contrast, to
18 the extent Plaintiff's claims are predicated on McGlamery's alleged activities in July 2008, it is not
19 clear on the face of the complaint that the nature of the function performed was quasi-judicial,
20 rather than investigative.  *See id.* at 127; *Broam v. Bogan*, 320 F.3d 1023, 1031 (9th Cir. 2003)
21 (noting that absolute immunity applies to "gathering additional evidence after probable cause is
22 established or criminal proceedings have begun," but not to "gathering physical evidence and
23 conducting interrogations to determine whether a crime has been committed and whether probable
24 cause exists to arrest a suspect"); *cf. Forsyth v. Kleindienst*, 599 F.2d 1203, 1215 (3d Cir. 1979 )
25 (holding that "to the extent that the securing of information is necessary to a prosecutor's decision
26

7

Case 3:09-cv-00593-LRH-VPC   Document 148   Filed 11/04/11   Page 8 of 12

1  to initiate a criminal prosecution, it is encompassed within the protected, quasi-judicial immunity

2  afforded to the decision itself"). Thus, as to the alleged activities in July 2008 only, the court

3  declines at this time to grant prosecutorial immunity. As to all other alleged activities, however,

4  McGlamery and Masto are entitled to absolute immunity.

5       **B. Eleventh Amendment Immunity**

6       State Defendants also reassert that they are entitled to Eleventh Amendment immunity. The

7  Eleventh Amendment bars federal courts from hearing claims for damages brought against state

8  officers who are sued in their official capacities. *Pennhurst State Sch. & Hosp. v. Halderman*, 465

9  U.S. 89, 106 (1984). However, it does not bar § 1983 personal-capacity claims against state

10 officers in federal court. *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991).

11      The court previously determined that the Eleventh Amendment bars this court from hearing

12 Plaintiff's claims against defendants Buell, Tolotti, Prowse and McGlamery in their official

13 capacities, but the Eleventh Amendment does not shield said defendants from Plaintiff's claims in

14 their individual capacities. (Doc. #100, pp. 8-9.) Accordingly, Plaintiff concedes that her Second

15 Amended Complaint should have named the defendants only in their individual capacities. Thus,

16 Plaintiff's claims shall be dismissed insofar as said defendants are named in their official

17 capacities.

18      Regarding newly named defendants Masto, Hafen and Almarez, the parties agree that the

19 Eleventh Amendment does not apply to claims against heads of state agencies in their official

20 capacities where only injunctive relief is sought. Accordingly, to the extent Plaintiff seeks

21 injunctive relief against Masto and Hafen in their official capacities, as Attorney General and

22 Director of the Department of Public Safety, respectively, the Eleventh Amendment does not apply.

23 However, to the extent Plaintiff seeks damages against Masto and Hafen in their official capacities,

24 such damages claims are barred. Also, because Almarez, as Chief of the Nevada Highway Patrol, a

25 division within the Department of Public Safety, is a subordinate of Hafen, all claims against

26

<2>8</2>

Almarez in his official capacity are barred.

**C. Qualified Immunity**

State Defendants assert they are entitled to qualified immunity as to Plaintiff's Fourth Amendment and Sixth Amendment claims. "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Pearson v. Callahan*, 129 S. Ct. 808, 816 (2009).

    **1.**     **Fourth Amendment**

The court previously dismissed Plaintiff's Fourth Amendment claim on the basis that Plaintiff failed to meet her burden of pleading factual allegations that demonstrate the absence of probable cause. (Doc. #100, pp. 10-11.) Further, on Plaintiff's motion for reconsideration, the court reaffirmed that determination but granted Plaintiff leave to amend "to add additional factual allegations, including facts addressing the 'totality of the circumstances known to the arresting officers.'" (Doc. #113, pp. 3-4.) Plaintiff has attempted to satisfy that burden by challenging the Prowse affidavit, upon which this court previously relied, as "incompetent, incomplete, and misleading in material respects." (Doc. #117, ¶ 60.) Having considered Plaintiff's supplemental allegations in the Second Amended Complaint, as well as the Prowse affidavit attached thereto, the court reaffirms its prior determination that Plaintiff's allegations are inadequate to demonstrate the absence of probable cause for arresting, indicting, and prosecuting Plaintiff. Accordingly, the court will again dismiss this claim.[5]

    **2.**     **Sixth Amendment**

Plaintiff alleges that she was denied procedural due process in violation of the Sixth and Fourteenth Amendments, in that following her arrest she "was jailed in Carson City, was never read

---

[5]For the same reason, Plaintiff's malicious prosecution claim shall be dismissed once again. (*See* Doc. #117, pp. 14-15 ("A finding of probable cause 'requires a conclusion that malice is nonexistent.' *Rashidi v. Albright*, 818 F. Supp. 1354, 1360 (D. Nev. 1993).").)

her Miranda rights, was not allowed to call her attorney, was never told why she was being arrested, nor shown the alleged arrest warrant after asking to view the warrant several times." (Doc. #117, ¶ 104.) Plaintiff's complaint includes no allegations, however, that any State Defendants were involved in Plaintiff's arrest and detention. Indeed, Plaintiff effectively concedes as much in her opposition to the Carson City Defendants' motion for summary judgment. (*See* Doc. #139, p. 4 ("Although that cause of action does not clearly identify the parties, it is alleged against Carson City and Ken Furlong as the Sheriff and supervisor of the Carson City jail, as well as Doe Defendants.").) Accordingly, the court will dismiss this claim as to all State Defendants.

### D. Discretionary-Act Immunity

State Defendants also assert they are entitled to sovereign immunity from tort liability under Nevada's discretionary-function exception to the general waiver of sovereign immunity. Nevada state officers and employees are immune from civil liability for "the exercise or performance [of] or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved is abused." Nev. Rev. Stat. § 41.032(2). Under the two-part test adopted by the Nevada Supreme Court, "to fall within the scope of discretionary-act immunity, a decision must (1) involve an element of individual judgment or choice and (2) be based on considerations of social, economic, or political policy." *Martinez v. Maruszczak*, 168 P.3d 720, 729 (Nev. 2007).[6]

"The focus of the second criterion's inquiry is not on the employee's 'subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.'" *Id.* at 728 (quoting *United States v. Gaubert*, 499 U.S. 315, 325 (1991)). "Under that test, decisions that occur at all levels of government, including frequent or routine decisions, may be shielded by NRS 41.032(2)

---

[6]Plaintiff's reliance on *State v. Silva*, 86 Nev. 911 (1970), is misplaced. In adopting this two-part test, the *Martinez* court specifically abandoned the "planning-versus-operational test" applied in *Silva*, as well as the "discretionary-versus-ministerial test." *Martinez*, 168 P.3d at 726-27 & n.25 (citing *Silva*).

discretionary-act immunity, provided the decisions involved government policy concerns." *Ransdell v. Clark County*, 192 P.3d 756, (Nev. 2008). Because Nevada's statute mirrors the Federal Tort Claims Act ("FTCA"), Nevada looks to federal decisions in analyzing claims of discretionary-act immunity. *Martinez*, 168 P.3d at 727.

Here, defendants Buell and Tolotti are alleged to have complained to the Attorney General's Office about Plaintiff's policy of refusing to release a towed vehicle to its owner without presentation of a valid driver's license and proof of insurance, and they told Plaintiff to discontinue the practice. Tolotti further obtained additional complaints about Plaintiff's practice and referred them to the Attorney General. Defendant Prowse is alleged to have contacted individuals whose cars had been impounded in an effort to get them to file complaints, and based on his findings he prepared an affidavit, upon which a warrant was issued for Plaintiff's arrest. Finally, defendant McGlamery is alleged to have issued a letter and subpoena demanding Plaintiff's company's financial records. McGlamery then filed criminal charges and obtained a warrant for Plaintiff's arrest, for which the court has already determined he is entitled to prosecutorial immunity.

The above investigative activities involve an element of individual judgment or choice, as the individuals were required to use their own judgment and conduct an individualized assessment of Plaintiff's business practices to determine if such practices were authorized and whether referral to the appropriate authorities and further investigation was warranted. *See Ransdell*, 192 P.3d at 762-63. Furthermore, such investigative activities required an evaluation of whether Plaintiff's business practices in refusing to release towed vehicles despite presentation of proof of ownership, and later selling the vehicles to itself at auction for $0 and taking title, were in compliance with Nevada law and consistent with the vehicle owners' property rights. Defendants' investigative activities were therefore grounded on valid public policy concerns. *See id.* at 763-64. Defendants Buell, Tolotti, Prowse and McGlamery are therefore entitled to discretionary-act immunity.

Regarding defendants Masto, Hafen and Almarez, Plaintiff asserts only a claim of vicarious

11

liability based on the allegation that said defendants breached their duties to train and supervise their subordinates. Because these defendants are sued only under a theory of vicarious liability for the actions of others who are entitled to discretionary-act immunity, these defendants are equally entitled to such immunity. Moreover, the Ninth Circuit has specifically held that "decisions relating to the hiring, training and supervision of employees usually involve policy judgment of the type Congress intended the discretionary function exception to shield." *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000). Thus, Masto, Hafen and Almarez are entitled to discretionary-act immunity.

## IV. Conclusion

In summary, the court concludes that all State Defendants are immune from suit based on some combination of prosecutorial immunity, Eleventh Amendment immunity, qualified immunity and discretionary-act immunity.

IT IS THEREFORE ORDERED that State Defendants' Motion to Dismiss (#122) is GRANTED.

IT IS SO ORDERED.

DATED this 3rd day of November, 2011.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE