UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

|  |  |
|---|---|
| DAIANA AZPILCUETA, individually and on behalf of CAL-NEVA TRANSPORT & TOW, INC., a Nevada corporation,<br><br>    Plaintiffs,<br><br>v.<br><br>JERALD L. HAFEN, individually and as Director of the Nevada Division of Public Safety; TONY ALMAREZ, individually and as Chief of the Nevada Highway Patrol; CATHERINE CORTEZ MASTO, individually and as the Nevada Attorney General; CHARLES TOLOTTI, in both his professional and individual capacity; DEAN BUELL, in both his professional and individual capacity; JOHN MCGLAMERY, in both his professional and individual capacity; WILLIAM PROWSE, in both his professional and individual capacity; CITY OF CARSON CITY, a municipality of the State of Nevada; KEN FURLONG, individually and as Sheriff of Carson City; STEVEN SCHUETTE, in both his professional and individual capacity; STEVE ALBERTSEN, in both his professional and individual capacity; KEVIN MCCOY, in both his professional and individual capacity; MARCOS BRITO, an individual; and DOE DEFENDANTS 1-50,<br><br>    Defendants. | 3:09-CV-00593-LRH-VPC<br><br>ORDER |

Before the court is Defendants Carson City, Ken Furlong, Steven Schuette, Steven Albertsen and Kevin McCoy's (collectively "Carson City Defendants") Motion for Summary Judgment (#132[1]). Plaintiff Daiana Azpilcueta, individually and on behalf of Cal-Neva Transport & Tow, Inc., ("Plaintiff") filed an opposition (#139), to which the Carson City Defendants replied (#140).

I.   **Facts and Procedural History**

This action arose out of Plaintiff's operation of a towing company and an impound yard in Carson City, Nevada, from 2004 until 2009. Plaintiff opened Cal-Neva Transport & Tow, Inc. ("Cal-Neva") for business in February 2004. In August or September 2004, Plaintiff met with Defendant Steven Schuette, then Chief Deputy with the Carson City Sheriff's Office ("CCSO"), to have Cal-Neva placed on the CCSO's tow rotation. According to Schuette, he initially informed Plaintiff that her company would be placed on the rotation at the beginning of the next month and instructed dispatch accordingly. But after dispatch informed Schuette that placing Cal-Neva on the next tow rotation would require bumping the company already scheduled, Schuette informed Plaintiff that the information he initially gave her was incorrect and that Cal-Neva would be placed on the rotation after the other established companies had completed their rotations. According to Plaintiff, Schuette stated that the delay was because CCSO had "priority customers that we cater to first." Cal-Neva was accordingly placed on the CCSO rotation in January 2005. Plaintiff avers that Schuette told her that her competitors did not like competition, which Schuette denies.

In December 2004, Defendant Kevin McCoy, an employee of the Carson City Health and Human Services Code Enforcement Division, contacted Plaintiff regarding a code enforcement issue. The contact was precipitated by a complaint filed by the owner of Valley Towing that he had been required to install site-obscuring fencing but Plaintiff had not. Plaintiff avers that on

---

[1]Refers to the court's docket entry number.

December 14, 2004, McCoy called her and advised her to stay off the CCSO tow rotation, which McCoy denies. The parties agree, however, that on December 17, 2004, McCoy visited Plaintiff to inform her of the fencing requirements for tow yards. In April 2005, McCoy informed Plaintiff that her company would be removed from the CCSO tow rotation in May 2005 unless the required fencing was installed. Plaintiff eventually installed the fencing, and Cal-Neva was never removed from the CCSO rotation due to code compliance issues.

After the CCSO received some complaints concerning Cal-Neva's business practices regarding the release of towed vehicles, Defendant Steven Albertsen, Undersheriff of Carson City, contacted the Nevada Transportation Authority ("NTA") to inquire as to whom such complaints should be referred. Albertsen spoke with Defendant Charles Tolotti at NTA and was informed that the Nevada Attorney General's Office was addressing such complaints. Following Albertsen's inquiry, those assigned to the front desk at the CCSO were instructed to direct any complaints to the Attorney General's Office. Cal-Neva was not taken off of the CCSO tow rotation at that time.

Following an investigation by the Attorney General's Office into Plaintiff's business practices, on October 22, 2008, that office filed a criminal complaint against Plaintiff and obtained an arrest warrant on charges of embezzlement, attempting to commit theft by embezzlement, and conspiracy to commit theft by embezzlement. Two days later, Plaintiff turned herself into the CCSO. She was arrested, booked, and released on bond four hours later. As a result of Plaintiff's arrest, Cal-Neva was removed from both the CCSO and NHP tow rotations. The removal from the CCSO rotation occurred after Defendant Albertsen read about Plaintiff's arrest in the newspaper.

On February 27, 2009, after a two-day preliminary hearing, the court dismissed the charges against Plaintiff, concluding that there was no evidence that Plaintiff committed a crime. Following dismissal of the charges, Cal-Neva was reinstated to the CCSO and NHP rotations. The removal from the CCSO rotation lasted one month. Plaintiff alleges that she continued to suffer harassment and discrimination, however, and she notes that the numbers of tows from the CCSO

1  rotation during her assigned months have decreased in the years following her arrest.

2       On October 5, 2009, Plaintiff filed the instant action alleging various claims against the Carson City Defendants and others.  The currently operative Second Amended Complaint alleges the following claims: (1) violation of Plaintiff's Fourth Amendment right to be free from arrest without probable cause; (2) conspiracy; (3) intentional infliction of emotional distress; (4) intentional interference with contractual relations and prospective economic advantage; (5) malicious prosecution; (6) abuse of process; (7) supervisory liability for failure to train and supervise; and (8) violation of Plaintiff's procedural due process rights under the Sixth and Fourteenth Amendments.[2]  The Carson City Defendants are not named in claims one and six and move for summary judgment on all other claims.

## II.  Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, answers to interrogatories, and other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier

---

[2] Plaintiff also includes "Injunctive Relief" as a separately stated claim. As the court previously ruled, however, an injunction is not an independent claim for relief.

4

1  of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259
2  (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).
3        To successfully rebut a motion for summary judgment, the non-moving party must point to
4  facts supported by the record which demonstrate a genuine issue of material fact. *Reese v.*
5  *Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might
6  affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
7  242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary
8  judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute
9  regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could
10 return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a
11 scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute;
12 there must be evidence on which a jury could reasonably find for the party. *Id.* at 252.

13 **III.   Discussion**

14    **A. Conspiracy**

15       Plaintiff's second claim for relief alleges that Defendants Schuette, Albertsen and McCoy
16 acted in concert with the intent to deprive Plaintiff of contract rights and economic advantage by
17 having Cal-Neva removed from the tow rotation.[3] (Doc. #117, ¶ 66; *see also* Doc. #139, p. 10.)
18 Under Nevada law, "[a]n actionable civil conspiracy consists of a combination of two or more

---

[3]Plaintiff's complaint also refers to a conspiracy to violate Plaintiff's "constitutional" rights. But that allegation pertains only to the State Defendants. The Carson City Defendants are not named in Plaintiff's first cause of action for violation of her Fourth Amendment rights. And Plaintiff has presented no allegations that the Carson City Defendants agreed or took any concerted action to violate Plaintiff's constitutional rights. Rather, Plaintiff alleges only that they conspired to have Cal-Neva removed from the tow rotation. (*See* Doc. #117, ¶ 43.) In any event, to the extent Plaintiff argues in her opposition that she was arrested without probable cause in violation of her constitutional rights, the court concludes that Plaintiff has failed to present sufficient evidence to withstand summary judgment. (*Cf.* Doc. #148, p. 9 (granting State Defendants' motion to dismiss Plaintiff's Fourth Amendment claim on the basis that Plaintiff's allegations are inadequate to demonstrate the absence of probable cause).)

persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts." *Sutherland v. Gross*, 772 P.2d 1287, 1290 (Nev. 1989).  To prevail in a civil conspiracy action, a plaintiff has to prove an explicit or tacit agreement between the tortfeasors.  *GES, Inc. v. Corbitt*, 21 P.3d 11, 15 (Nev. 2001).

      Here, Plaintiff has presented no evidence upon which a reasonable jury could conclude that Schuette, Albertsen and McCoy reached an explicit or tacit agreement or took any concerted action to accomplish an unlawful objective, whether amongst themselves or with the State Defendants.

      First, Schuette assisted in initially placing Cal-Neva on the CCSO tow rotation and, following the instructions of dispatch, informed Plaintiff that Cal-Neva's rotation could not begin until after the other established companies had completed their rotations.  Plaintiff has made no showing that CCSO's procedures for assigning start dates to new tow companies was unlawful, nor that Schuette was part of any agreement or engaged in any concerted activity to accomplish an unlawful objective.

      Second, McCoy's involvement was limited to a code enforcement issue with Cal-Neva's lack of fencing beginning in December 2004 and ending in 2005.  McCoy did threaten to have Cal-Neva removed from the tow rotation if the property was not brought into compliance.  But Plaintif makes no showing that McCoy's code enforcement actions were unwarranted, and it is uncontroverted that McCoy never carried through with the threatened removal because Cal-Neva eventually installed the required fencing.  While Plaintiff states in her affidavit that McCoy attended her preliminary hearing in February 2009 and she saw him speak to State Defendants John McGlammery and William Prowse, such evidence is insufficient to establish that McCoy was part of an agreement or engaged in any concerted action to accomplish an unlawful objective.

      Finally, Albertsen contacted the NTA and spoke with State Defendant Charles Tolotti to inquire as to whom complaints about Cal-Neva's business practices should be referred, he instructed the front desk at the CCSO to refer such complaints to the Attorney General's Office,

and he was involved in Cal-Neva's temporary removal from the CCSO tow rotation after reading about Plaintiff's arrest in the newspaper. Such evidence is insufficient, however, to establish that Albertsen was part of an agreement or engaged in any concerted action to accomplish an unlawful objective.

For all these reasons, the Carson City Defendants are entitled to summary judgment on Plaintiff's civil conspiracy claim.

### B. Intentional Infliction of Emotional Distress

Plaintiff's third claim for relief alleges that Defendants Schuette, Albertsen and McCoy threatened and harassed Plaintiff with the intention of or reckless disregard for inflicting emotional distress. To prevail on a claim of intentional infliction of emotional distress, the plaintiff must establish: (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff has suffered severe or extreme emotional distress, and (3) actual or proximate causation. *Olivero v. Lowe*, 995 P.2d 1023, 1025 (Nev. 2000). "[E]xtreme and outrageous conduct is that which is 'outside all possible bounds of decency' and is regarded as 'utterly intolerable in a civilized community.'" *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (citation omitted).

Plaintiff's claim for intentional infliction of emotional distress is based on the following facts: (1) in 2004, Schuette told Plaintiff that Cal-Neva would be added to tow rotation the next month but later told her that Cal-Neva's start date would be moved back because CCSO had "priority customers that we cater to first"; (2) in 2004 and 2005, McCoy advised Plaintiff to stay off the tow rotation, initiated a code enforcement action against Cal-Neva because it lacked site-obscuring fencing, and threatened to have Cal-Neva removed from the tow rotation unless such fencing was installed, and in 2009 he attended Plaintiff's preliminary hearing; and (3) Albertsen referred complaints about Plaintiff's business practices to state authorities and was involved in Cal-Neva's temporary removal from the CCSO tow rotation after reading about her arrest in the

newspaper. It is undisputed that the activities of Schuette and McCoy in 2004-05 occurred well outside the applicable two-year statute of limitations. *See* NRS § 11.190(4)(e). Furthermore, none of the above activities are outside all possible bounds of decency or utterly intolerable in a civilized community. Summary judgment is therefore appropriate.

### C. Interference with Contractual Relations and Prospective Economic Advantage

Plaintiff's fourth claim for relief alleges that all Carson City Defendants intentionally interfered with Plaintiff's existing or prospective tow-rotation contracts with NHP and CCSO. "To establish intentional interference with contractual relations, the plaintiff must show: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *Sutherland*, 772 P.2d at 1290. To establish interference with prospective economic advantage, the plaintiff must show: "(1) a prospective contractual relationship between the plaintiff and third party; (2) knowledge by the defendant of the prospective relationship; (3) intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct." *Wichinsky v. Mosa*, 847 P.2d 727, 729-30 (Nev. 1993) (citing *Leavitt v. Leisure Sports, Inc.*, 734 P.2d 1221, 1221 (Nev. 1987)).

As above, the activities of Schuette and McCoy in 2004-05 are outside the three-year statute of limitations that applies to claims for intentional interference with contractual relations and prospective economic advantage. *See* NRS § 11.190(3)(c); *Stalk v. Mushkin*, 199 P.3d 838, 842 (Nev. 2009). Also, although McCoy may have attended Plaintiff's preliminary hearing in 2009, there is no evidence whatsoever that McCoy's attendance was intended to disrupt or actually contributed to any disruption of Plaintiff's existing or prospective towing contracts.

Regarding Albertsen, it is undisputed that Albertsen directed the referral of complaints to the appropriate state authorities and was involved in Cal-Neva's removal from the CCSO tow

8

1   rotation after Plaintiff's arrest until the charges were dismissed.  Plaintiff presents no evidence,
2   however, that Albertsen engaged in such activities with the intent to disrupt Plaintiff's existing or
3   prospective towing contracts and without privilege or justification as Undersheriff.  Moreover,
4   Albertsen is entitled to discretionary-act immunity for such activities.  *See* NRS § 41.032(2).
5       Plaintiff submits no evidence whatsoever as to the remaining Carson City Defendants, the
6   City and Sheriff Furlong.  Summary judgment is therefore appropriate.

### D.  Malicious Prosecution

Plaintiff's fifth claim for relief alleges that Defendant McCoy caused criminal charges to be filed against Plaintiff.  Under Nevada law, a claim of malicious prosecution requires proof of (1) lack of probable cause to initiate the prior criminal proceeding; (2) the defendant acted with malice; (3) termination of the prior criminal proceedings; and (3) damage.  *LaMantia v. Redisi*, 38 P.3d 877, 879 (Nev. 2002).  "A malicious prosecution claim requires that the defendant initiated, procured the institution of, or actively participated in the continuation of a criminal proceeding against the plaintiff."  *Id.* at 879-80.

Plaintiff's malicious prosecution claim against McCoy is predicated solely on the disputed facts that McCoy attended Plaintiff's preliminary hearing and was seen by Plaintiff speaking with State Defendants McGlammery and Prowse.  Even accepting these facts as true, no reasonable jury could find based on this evidence that McCoy initiated, procured the institution of, or actively participated in the continuation of the criminal proceeding against Plaintiff.  Summary judgment is therefore appropriate.

### E.  Failure to Train and Supervise

Plaintiff's seventh claim for relief alleges that Defendants Carson City, Sheriff Furlong, and Undersheriff Albertsen had a duty to provide training and supervision to ensure that McCoy and others did not engage in gender discrimination against, harass, conspire against, and instigate a criminal investigation and prosecution against Plaintiff and Cal-Neva without probable cause, or

otherwise abuse their power to force Cal-Neva off the tow rotation. (Doc. #117, ¶ 97.) Plaintiff has failed to produce sufficient evidence, however, to establish that any such predicate misconduct occurred. Nor has Plaintiff produced any evidence whatsoever that inadequate training or supervision by the named defendants actually caused any damage to Plaintiff. Summary judgment is therefore appropriate.

**F.  Sixth Amendment**

Plaintiff's eighth claim for relief against Defendants Carson City and Sheriff Furlong alleges, pursuant to 42 U.S.C. § 1983, that Plaintiff's Sixth and Fourteenth Amendment rights were violated when, following her arrest, Plaintiff was never read her Miranda rights, was not allowed to call her attorney, and was never told why she was being arrested, nor shown the arrest warrant after asking to view it several times. (*See* Doc. #117, ¶ 104; Doc. #139, p. 4.)

Because this claim is not brought against any individuals who actually participated in the alleged constitutional deprivations, Plaintiff's sole avenue for recovery under § 1983 is a claim of municipal liability. However, "municipal liability may not be founded on a theory of respondeat superior." *Webb v. Sloan*, 330 F.3d 1158, 1163-64 (9th Cir. 2003). The actions of individual employees may support liability against a municipality only if the constitutional violation was committed (1) pursuant to an official municipal policy, (2) pursuant to a longstanding practice or custom, or (3) by an individual employee with final policymaking authority. *Id.* at 1164. Here, because Plaintiff has produced no evidence to support a finding under any of these approaches.

Furthermore, Plaintiff has failed to establish an actionable constitutional violation in the first place. First, "a plaintiff may not, as a matter of law, maintain a section 1983 action based upon the failure by the police to issue Miranda warnings." *Cooper v. Dupnik*, 924 F.2d 1520, 1527 (9th Cir. 1991). Second, the Sixth Amendment right to counsel does not attach until the accused's initial appearance before a judicial officer. *Rothgery v. Gillespie County*, 554 U.S. 191, 213 (2008); *Cooper*, 924 F.2d at 1526 n.7. And finally, Plaintiff had no constitutional right to be

informed of the reason for her arrest or to view the arrest warrant. *Kladis v. Brezek*, 823 F.2d 1014, 1018 (7th Cir. 1987). Like the right to counsel, the Sixth Amendment right to be informed of the nature and cause of the accusation does not attach until the accused's initial appearance. The evidence also suggests that Plaintiff was well aware of the reason for her arrest. It is undisputed that Plaintiff turned herself in two days after the Nevada Attorney General's Office obtained a warrant for her arrest, and she was arrested and booked under that authority. Summary judgment is therefore appropriate.

**IV.   Conclusion**

For the foregoing reasons, the court concludes that the Carson City Defendants are entitled to summary judgment on all claims.

IT IS THEREFORE ORDERED that Carson City Defendants' Motion for Summary Judgment (#132) is GRANTED.

IT IS SO ORDERED.

DATED this 8th day of November, 2011.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE